IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GOLDEN GATE NATIONAL SENIOR      :
CARE, LLC; GGNSC EQUITY          :
HOLDINGS, LLC; GGNSC CAMP        :
HILL III GP, LLC; GGNSC CAMP     :
HILL III, LP d/b/a GOLDEN LIVING :
CENTER – CAMP HILL; GGNSC        :
ADMINISTRATIVE SERVICES, LLC;    :
GGNSC CLINICAL SERVICES, LLC;    :
and GGNSC HOLDINGS, LLC,         :
                                 :     Misc. No. 14-mc-0421
            Petitioners          :
                                 :
      v.                         :
                                 :
BEVERLY E. ADDISON and           :
CLAUDETTE L. BROOKS,             :
as Co-Administraces for the Estate of :
LOUISE E. MCCAULEY, deceased,    :
                                 :     Judge Sylvia H. Rambo
            Respondents          :

# **M E M O R A N D U M**

This civil case involves a petition to compel arbitration between a nursing home and the administratrices of the estate of a decedent resident, who are suing the nursing home in state court. Presently before the court is a petition to compel arbitration under the Federal Arbitration Act, citing an arbitration agreement between the nursing home and one of the administratrices by way of a durable power of attorney, filed by the defendants in the state court action. For the following reasons, the court will grant the petition to compel arbitration.

## I.        **Background**

The petitioners, related healthcare business entities, are citizens of Delaware and California (collectively "Petitioners").[1]  (*See generally* Doc. 1, ¶¶ 2-9.) Louise E. McCauley ("Decedent") was a resident of Golden Living Center – Camp Hill until her death on March 15, 2014.  (*Id*. at ¶ 10.)  Respondents Beverly E. Addison ("Respondent Addison") and Claudette L. Brooks ("Respondent Brooks"), both of whom are daughters of Louise E. McCauley and co-administratrices of her estate, are Pennsylvania residents and reside within the Middle District of Pennsylvania (collectively "Respondents").  (*Id*. at ¶¶ 11-12.)

On May 25, 2012, the Decedent was admitted into the Golden Living Center – Camp Hill, a nursing home located in Camp Hill, Cumberland County, Pennsylvania.  (*Id*. at ¶ 19.)  Upon her admission, Respondent Brooks, acting with express authority to do so on her mother's behalf by virtue of a durable power of attorney (Doc. 3-5), signed an Alternative Dispute Resolution Agreement ("ADR Agreement"), which provided that any dispute, including "any and all disputes arising out of or in any way relating to this Agreement or to the [Decedent]'s stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action," must first be submitted to mediation and, if unsuccessful, to arbitration.  (*See* Doc. 1, ¶ 20; *see also* Doc. 1-1, pp. 64-67 of 81.) Emphasized in the agreement is the following paragraph:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS,**

---

[1] Petitioners are related through an elaborate corporate structure.

**AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

(Doc. 1-1, p. 64 of 81 (emphasis in original).)  Also contained in the ADR Agreement and relevant to the instant dispute is the following portion of the paragraph discussing the enforcement of the agreement:

> This agreement shall be binding upon the Facility when signed by or on behalf of the Resident, *regardless of whether this Agreement has been signed by a Facility representative*.

(*Id.* at p. 66 of 81 (emphasis supplied).)  The agreement bears Respondent Brooks's signature, albeit on the line designated as a space to specify the capacity of the legal representative.  (*Id.* at p. 67 of 81.)

On November 4, 2013, Respondents filed a Praecipe for Writ of Summons in the Cumberland County Court of Common Pleas naming Petitioners and Denise Curry, Petitioner's regional vice president who managed and controlled the operations of, *inter alia*, Golden Living Center – Camp Hill during the Decedent's residency, as defendants.  (*See* Doc. 1, ¶ 28.)  On July 7, 2014, Respondents filed a complaint, raising claims of negligence and wrongful death and asserting a survival action, seeking an unspecified amount of compensatory and punitive damages.  *See Addison v. Golden Gate Nat'l Senior Care*, Civ. No. 2013-6462, Compl. (Pa. Com. Pl. Cumb. Cnty. July 7, 2014).  On July 23, 2014, Petitioners filed the following preliminary objections to the complaint: (1) pursuant

to Pa. R.C.P. 1028(a)(6) in the nature of a motion to compel mediation and/or arbitration; (2) pursuant to Pa. R.C.P. 1028(a)(4) in the nature of a demurrer for legal insufficiency of a pleading regarding the request for punitive damages; and (3) pursuant to Pa. R.C.P. 1028(a)(3) for insufficient specificity of pleading. *See id.* at Prelim. Objs. (Pa. Com. Pl. Cumb. Cnty. July 23, 2014). Respondents filed a response on July 25, 2014, arguing that: (1) the county court should retain jurisdiction because Petitioners had not presented an agreement signed by either party; (2) the complaint pleaded facts sufficient to justify a claim for punitive damages; and (3) the paragraphs in the complaint are pleaded with sufficient specificity. *See id.* at Opp'n to Prelim. Objs.(Pa. Com. Pl. Cumb. Cnty. July 25, 2014).  Respondents' counsel listed the matter for oral argument to be held on August 15, 2014.  To date, no oral argument has been set with regard to the preliminary objections and the Cumberland County court has not issued a ruling.

On July 22, 2014, Petitioners filed a petition seeking to compel arbitration, stay the improperly commenced state court proceedings, and grant declaratory relief.  (Doc. 1.)  On July 28, 2014, Petitioners filed the instant motion to compel arbitration, requesting that the court compel Respondents to proceed consistent with the arbitration agreement and stay the state court action.  (Doc. 3; *see also* Doc. 4.)  On August 21, 2014, Respondents filed a brief in opposition (Doc. 10), and, on September 4, 2014, Petitioners filed their reply (Doc. 11).  Thus, this matter has been fully briefed and is appropriate for consideration.

## II.        __Legal Standard__

Initially, the parties dispute the legal standard applicable to the instant motion.  Petitioners argue that the court should evaluate the motion under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 4, p. 10 of 18.)  Respondents argue that such motions are governed under the summary judgment standard set forth at Federal Rule of Civil Procedure 56(a).  (Doc. 10-2, p. 11 of 32.)  Based on the facts of this case, the court determines that the motion will be assessed under the familiar motion to dismiss standard.

When deciding a motion to compel arbitration, a district court may rely upon either the standards governing motions to dismiss under Rule 12(b)(6) or the standards governing motions for summary judgment under Rule 56.  *See Guidotti v. Legal Helpers Debt Resolution LLC*, 716 F.3d 764, 771-76 (3d Cir. 2013).  In this regard, the Third Circuit has provided some guidance as to which standard may be appropriate under the given circumstances of a particular case:

> [W]hen it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.

*Id*. at 776 (internal citations and quotation marks omitted).  When a court finds that it must make findings in order to determine arbitrability, pre-arbitration discovery may

be warranted. *Id.* at 774 n.5. If a court elects to deny a motion to compel arbitration under Rule 12(b)(6) in order to allow discovery on the question of arbitrability, "[a]fter limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

In this case, as discussed in greater detail below, the issue regarding whether Respondents' claims asserted in the state court action are subject to arbitration may be readily ascertained from the undisputed documents that both parties address in their moving papers. Respondents' claims that the agreement is unenforceable due to technicalities in the agreement's execution can be resolved simply by looking to the terms of the agreement and the manner in which it was executed. Accordingly, Respondents have not shown that discovery into this matter is necessary, and, therefore, the court will consider this motion under the Rule 12(b)(6) standard.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. When examining a motion to dismiss under Rule 12(b)(6), the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. National Coll. Athletic. Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). In considering a motion to compel arbitration, the court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving

party.  *Eisenberger v. Chesapeake Appalachia LLC*, Civ. No. 09-cv-1415, 2010 WL
457139, *2 (M.D. Pa. Feb. 4, 2010).

**III.**       **Discussion**

Petitioners argue that the ADR Agreement is valid and enforceable and
that the court should accordingly enjoin Respondents from pursuing the state court
action.  Respondents argue that the ADR Agreement is not enforceable because it is
not properly executed, that the court lacks subject matter jurisdiction, and that the
court should otherwise abstain from adjudicating the motion due to the pending
motion in the state court.

**A.**       **The scope of the Federal Arbitration Act**

Initially, the court takes note of the broad scope of the FAA, which
provides in part as follows:

> A written provision in any . . . contract evidencing a
> transaction involving commerce to settle by arbitration a
> controversy thereafter arising out of such contract or
> transaction, or the refusal to perform the whole or any part
> thereof . . .  shall be valid, irrevocable, and enforceable,
> save upon such grounds as exist at law or in equity for the
> revocation of any contract.

9 U.S.C. § 2.  The FAA "creates a body of federal substantive law establishing and
governing the duty to honor agreements to arbitrate disputes."  *Century Indem. Co. v.
Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009).
Because arbitration is a contractual matter, prior to compelling arbitration pursuant to
the FAA, a court must first determine that: (1) an enforceable agreement to arbitrate
exists; and (2) the particular dispute falls within the scope of the agreement.  *Kirleis
v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009).  Arbitration

should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Century Indem.*, 584 F.3d at 524 (citing *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).  "Doubts should be resolved in favor of coverage." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998) (quoting *Bristol Farmers Mkt & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1219 (3d Cir. 1978)).

### B.    Subject matter jurisdiction and Section 4

The threshold question in deciding a petition to compel arbitration is to determine whether this court has jurisdiction.  Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement.  9 U.S.C. § 4.  That is, the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (quoting *Hall Street Assocs. v. Mattel*, 552 U.S. 576, 581-82 (2008) (internal quotation marks omitted)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983).  Thus, a petitioner proceeding under Section 4 must assert an independent source of subject matter jurisdiction.  Here, Petitioners assert that the court has diversity jurisdiction pursuant to 18 U.S.C. § 1332.  (Doc. 1, ¶ 14.)

Respondents argue that the court lacks subject matter jurisdiction because complete diversity is lacking.  (Doc. 10-2, p. 15 of 32.)  Yet, diversity exists on the face of the federal petition.  Petitioners are citizens of Delaware and

California, and, conversely, both Respondents and Decedent are citizens of
Pennsylvania.  Regarding the amount in controversy, the claims Petitioners seek to
arbitrate are for actual and punitive damages related to allegedly substandard medical
care provided to Decedent while she resided at the facility.  The court is satisfied that
the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  *See*
28 U.S.C. § 1332.

Respondents do not challenge that diversity jurisdiction exists based on
the face of the petition.  Rather, they contend that the court lacks subject matter
jurisdiction because complete diversity of citizenship among the parties cannot be
established.  Respondents argue that, pursuant to *Vaden*, a court "may 'look through'
the petition and examine the parties' underlying dispute to determine whether federal
question jurisdiction exits [sic] over the [Section] 4 petition."  (Doc. 10-2, p. 16 of
32.)  Respondents urge the court to look through the federal petition and instead
focus on the state court action, taking note of the omission of Denise Curry in the
federal action.

Curry has been named as a defendant in Respondents' underlying state
suit, but she is not a party in the present matter.  Presumably, she has been left out so
that the Petitioners can seek enforcement of their arbitration agreement in federal
court, as Curry's Pennsylvania citizenship would destroy diversity jurisdiction.
Respondents contend that the court must consider Curry's citizenship to determine
diversity.  To support their "look through" argument, Respondents cite *Vaden*,
wherein Discover Bank sued a credit card holder in state court to recover past due
charges.  *Vaden*, 556 U.S. at 53.  The credit card holder filed a counterclaim, also
asserting state law claims.  *Id.*  Discover Bank believed these claims were preempted

9

by federal banking law and filed an action in federal district court to compel arbitration of the counterclaims.  The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state court counterclaim and because federal courts cannot consider counterclaims when assessing federal question jurisdiction.  *See id*. at 70-71.  Accordingly, the Supreme Court directed district courts to look through the arbitration action and determine whether federal question jurisdiction exists based on the underlying state court suit. *Id.* at 62.

Although acknowledging that *Vaden* was decided in the context of federal question jurisdiction, Respondents submit that the Supreme Court's logic applies with equal force in cases resting on diversity jurisdiction.  (Doc. 10-2, p. 18 of 32.)  They argue that the court should look through the instant action and determine whether it would have jurisdiction over the state suit, which includes the non-diverse Curry.  The argument is not without its strong points.  In *Vaden*, the Supreme Court explained that a district court has jurisdiction in cases arising under Section 4 of the FAA "only if, 'save for' the [arbitration] agreement, *the entire, actual controversy between the parties,' as they have framed it*, could be litigated in federal court."  *Id*. at 66 (emphasis supplied).  One could plausibly read this language as requiring district courts to look through to the entire controversy in the state court to determine if it has diversity jurisdiction.

However, despite acknowledging that diversity exists as a separate method for bringing a claim under the FAA, *see, e.g., id.* at 65, the Court did not include diversity jurisdiction in holding that it approved of the "look through" approach to the extent that:

> A federal court may "look through" a [Section] 4 petition
> to determine whether it is predicated on an action that
> "arises under" federal law; in keeping with the well-
> pleaded complaint rule . . . , a federal court may not
> entertain a [Section] 4 petition based on the contents, actual
> or hypothetical, of a counterclaim.

*Id.* at 62 (emphasis supplied). This limitation was recognized by the Eighth Circuit, which noted that the *Vaden* Court "carefully limited its statement of the issues and holding to federal question jurisdiction" and "cited the circuit court cases creating the federal question conflict" but "did not cite any of the circuit court [Section] 4 diversity cases." *Northport Health Servs. of AK v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010).

Notwithstanding Respondents' logical arguments highlighting the potential problems with following *Rutherford*'s position of the limited application of *Vaden* to only federal question cases (*see generally* Doc. 10-2, pp. 18-19 of 32), the court finds more persuasive the Supreme Court's purposeful omission of diversity cases from its holding in *Vaden*. This does not result in, as Respondents suggest, this court "willfully disregard[ing]" its obligation to determine "whether it has jurisdiction over an underlying dispute when presented with a [Section] 4 petition to compel arbitration." (*Id.* at p. 19 of 32.) Indeed, based on the parties of this action, the court clearly has jurisdiction based on diversity of citizenship. However, the court does not find Respondents' "diversity look through" argument compelling and declines to look through the present federal action to determine whether it would have diversity jurisdiction over the state court action.

### C.   <u>Indispensable Party</u>

Respondents next argue that the action should be dismissed due to Petitioner's failure to join Curry, an indispensable party under Federal Rule of Civil Procedure 19, and that her joinder would destroy the complete diversity. (Doc. 10-2, p. 19 of 32.) Petitioners respond by arguing that Curry is not an indispensable party. Doc. 11, p. 10 of 25.) After consideration of the parties' arguments, the court agrees with Petitioners and concludes that Curry is not an indispensable party.

Because she is a citizen of Pennsylvania, Curry's joinder would destroy diversity jurisdiction. Accordingly, the question becomes whether she is indispensable such that the court must dismiss the action rather than proceed without her. Under Rule 19(b), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Simply because she is alleged to be a joint tortfeasor does not make Curry either necessary or indispensable. *See Alpha Pro Tech v. VWR Intern. LLC*, 984 F. Supp. 2d 425, 458 (E.D. Pa. 2013); *see also Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008). Thus, the court must assess whether Curry's interest in the action makes her indispensable. There are four factors Rule 19(b) directs a district court to consider when determining whether an individual is indispensable:

> (1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2)    the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3)     whether a judgment rendered in the person's absence
        would be adequate; and

(4)     whether the plaintiff would have an adequate remedy
        if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Respondents argue that they will not be afforded complete relief in the

absence of Curry being made a respondent in this action.  (Doc. 10-2, p. 22 of 32.)

They assert that they will be unduly prejudiced by either a grant of jurisdiction by

this court or by being subjected to arbitration with just the named petitioners and that

such a result would result in duplication of proceedings.  The court will address each

argument in turn.

First, the duplication of proceedings in these circumstances is not a

disqualifying factor.  Respondents rely on a *Cytec Industries v. Powell*, 630 F. Supp.

2d 680 (N.D.W.V. 2009), to argue that Curry is indispensable.  (Doc. 10-2, p. 24 of

32.)  In *Cytec*, the district court found that an alleged joint tortfeasor, who was

included as a defendant in the state court action but omitted in the employer's federal

action, was indispensable to a suit to compel arbitration.  *Id.* at 686.  The court

explained that if the case were to proceed without the non-diverse party, the plaintiff

in the state court would be forced to pursue its claims in two different forums, and

could be subject to potentially conflicting interpretations over the validity of the

arbitration agreement.  *Id.*  Drawing on Fourth Circuit precedent, the court found that

the duplicative litigation and potentially inconsistent legal conclusions concerning

the arbitration agreement created sufficient prejudice to deem the nonjoined party

indispensable.  *Id.*  In response, Petitioners cite *PaineWebber v. Cohen*, 276 F.3d

197, 202 (6th Cir. 2001), in which the Sixth Circuit held that the possibility of

duplicative proceedings is not dispositive.  In so doing, the *PineWebber* court noted that "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration."  *Id*. at 203 (citing *Moses H. Cone*, 460 U.S. at 20).  In any event, there exists a low risk that the state court will reach an inconsistent outcome regarding the ADR Agreement.  Even assuming such risk, however, this is not the degree of prejudice required to conclude that an absent party is indispensable.  *Id.* at 203.  The prejudice Respondents emphasize does not present the degree of prejudice necessary to support a conclusion that Curry is an indispensable party.  Thus, the risk of prejudice is low.

Respondents' state court claims against both Curry and Petitioners are based upon the same occurrence, that is, the alleged substandard care afforded to Decedent prior to her death.  Because the regional vice president has been sued in the underlying state court action, she has an interest in the controversy and her absence from this matter may arguably result in claims left undecided.  Thus, Respondents are correct: the claims against Curry "will need to be adjudicated eventually."  (Doc. 10-2, p. 22 of 32.)  However, as stated, a person's status as a joint tortfeasor does not make that person a necessary party.  *See Alpha Pro Tech*, 984 F. Supp. 2d at 458 ("[T]he mere fact . . . that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party."); *see also Huber*, 532 F.3d at 250 ("[I]t is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.").  Moreover, the instant action seeks to compel arbitration; it does not seek to adjudicate the merits of any claim.  Thus, this factor does not weigh in Respondents' favor.

The final factor, however, does weigh in Respondents' favor. Petitioners could seek to compel arbitration in the state court action, which they have done by virtue of filing preliminary objections.  *See Addison*, Civ. No. 2013-6462, Prelim. Objs. (Pa. Com. Pl. Cumb. Cnty. July 23, 2014).  Thus, Petitioners have an adequate remedy if this action is dismissed.  Yet, the potential existence of another forum does not, in and of itself, demand dismissal.

After balancing the factors of Rule 19, the court determines that the possibility of inconsistent rulings coupled with the burden on Respondents in pursuing duplicative litigation is not sufficiently prejudicial to find that Curry is indispensable.  Thus, although there might be some prejudice and notwithstanding the fact that the state court could provide adequate relief to Petitioners through its disposition of the pending preliminary objections, the court concludes that Curry is not an indispensable party under Rule 19(b) and that the action may proceed without her.

## D.    Abstention

Respondents request that even if this court has subject matter jurisdiction, it should decline to exercise jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Petitioners respond by arguing that there is no basis for abstention.  For the following reasons, the court will decline to abstain from exercising jurisdiction over the matter.

The *Colorado River* doctrine permits the court, for reasons of "wise judicial administration," to abstain from exercising its jurisdiction by staying or dismissing a pending federal action when there is a parallel state court proceeding. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton Inc.*, 571 F.3d 299, 307 (3d

Cir. 2009).  However, abstention from the exercise of federal jurisdiction is the

exception, not the rule.  *See id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S.

706, 716 (1996)).  Whether abstention under *Colorado River* is appropriate requires

a two-part inquiry: (1) first, the court must determine whether the state and federal

court proceedings are, in fact, "parallel"; and (2) if they are parallel, the court must

then weigh several factors to decide if the "exceptional circumstances warranting

abstention are present.  *Id.* at 307-08.

### 1.    <u>Parallel proceedings</u>

The threshold question is whether the state and federal proceedings at

issue are indeed parallel.  As recently recognized by the district court in *GGNSC*

*Lancaster v. Roberts*, Civ. No. 13-cv-5291, 2014 WL 1281130, *3 n.16 (E.D. Pa.

Mar. 31, 2014), the definition of "parallel" is one that has not been well-developed in

case law because courts do not always address this part of the inquiry, instead

assuming, *arguendo*, that the proceedings are parallel.

Generally, cases are parallel when they involve the same parties and

claims.  *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005).  Exact parallelism is not

required; rather, it is enough if the two proceedings are substantially similar, and

"there must be a likelihood that the state litigation will dispose of all the claims

presented in the federal case." *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506,

510-11 (E.D. Pa. 2002).  However, when the claims, parties, or requested relief

differ, abstention may not be appropriate.  For instance, "when the federal lawsuit

plaintiff is a defendant in the state court proceeding, and the federal proceeding

includes several defendants who are not parties to the state court proceeding, 'the

lawsuits are not parallel.'" *National Coll. Athletic Ass'n v. Corbett*, Civ. No. 13-cv-

0457, 2014 WL 2619288, *11 (M.D. Pa. June 12, 2014) (citing *Bill Goodwin Const. LLC v. Wondra Const. Inc.*, Civ. No. 13-cv-0157, 2013 WL 4005307, *8 (M.D. Pa. Aug. 5, 2013)).

   In cases such as this where a party files a motion to compel arbitration in federal court after the opposing party initiated an action in state court, the proceedings are not necessarily parallel.  In *Roberts*, a case involving a petition to compel arbitration between a nursing home and a nursing home resident who initiated an action against the nursing home in state court, the court held that the two proceedings were not parallel.  2014 WL 1281130 at *3.  The *Roberts* court recognized that the two actions shared the same parties and legal issue of whether arbitration was appropriate pursuant to an agreement.  *Id.*  However, dispositive to the court's conclusion on parallelism was the relief requested.  *See id.*  The district court reasoned:

> In [the federal] action, [the] petitioners seek to compel
> arbitration; in the state court action, the respondent/
> plaintiff seeks monetary damages for the alleged torts.
> *This difference alone is enough to show that the
> proceedings are not parallel under Third Circuit case law*.

*Id.* (emphasis supplied).  The court finds the *Roberts* court reasoning persuasive.

   Respondents correctly point out that the parties to each action are nearly identical and that both actions arise out of the same basic facts.  However, these factors alone do not suffice to make the two actions substantially similar.  Rather, as was recognized by the *Roberts* court, Petitioners seek to compel arbitration in their federal petition while Respondents seek monetary relief in the state court action. While the ADR Agreement is asserted in both actions, the relief requested is not the same.  *See Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985) ("The cases are not

truly parallel since the [first set of] plaintiffs seek money damages while the [second set of] plaintiffs did not.").  Indeed, the court's decision in this action will not resolve Respondents' claims asserted in the state court action.  For these reasons, the court does not conclude that the proceedings are parallel.

## 2.    Colorado River factors

Even if the proceedings could be considered parallel, consideration of the factors listed by the Supreme Court in *Colorado River* and its progeny demonstrates that abstention is not warranted.  In determining whether an action requires abstention under *Colorado River*, courts should consider: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Nationwide Mut. Fire Ins.*, 571 F.3d at 308 (citing *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999); *Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 23-27.  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19.  However, the balancing of factors is "heavily weighted in favor of the exercise of jurisdiction." *Nationwide Fire Ins.*, 571 F.3d at 308 (quoting *Moses H. Cone*, 460 U.S. at 16).

In the case *sub judice*, the first factor is not relevant to the court's determination because this is not an *in rem* action and no property is at issue.  The second factor refers to the federal forum's geographic location.  *See Morgan*

*Steanley Dean Witter Reynolds v. Gekas*, 309 F. Supp. 2d 652, 657 (M.D. Pa. 2004) (citing *Colorado River*, 424 U.S. at 820).  In that regard, the Cumberland County Court of Common Pleas sits in Carlisle, Pennsylvania, approximately twenty miles from the forum of the federal action in Harrisburg, Pennsylvania.  This leads the court to conclude that the state and federal forums are equally convenient to all parties.  Therefore, the second factor is neutral to the court's abstention analysis.

Contrary to Respondents' argument, the third factor weighs against abstention.  In assessing this factor, the court must examine whether the statute, regulation, or authority at issue evinces a policy of avoiding piecemeal litigation. *Nationwide Fire Ins.*, 571 F.3d at 308 (citing *Spring City*, 193 F.3d at 172).  The FAA maintains a policy in favor of arbitration, even at the expense of piecemeal litigation.  *See id.*  ("[R]ather than containing a strong policy against piecemeal litigation, the FAA has a policy in favor of it, at least to the extent necessary to preserve arbitration rights.").  In *Dean Witter Reynolds v. Byrd*, the Supreme Court recognized that the FAA "requires district courts to compel arbitration . . . when one of the parties files a motion to compel, *even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.*"  470 U.S. 213, 217 (1985) (emphasis added).  The FAA's "preeminent concern" to enforce private agreements governs even if piecemeal litigation is the inevitable result.  *Id.* at 221.

Respondents argue that the court's declining to abstain would cause duplicative proceedings because Curry is a party in the state court action but is absent from the federal action.  (Doc. 10-2, p. 27 of 32.)  Respondents reason that regardless of the outcome of the instant motion, they will still have to proceed with their case against Curry in the state court action.  (*Id.*)  While this concern is valid,

19

the ADR Agreement at issue covers "[a]ll claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the [Decedent]," which would likely be applicable to the claims asserted against Curry. (*See* Doc. 1-1, pp. 64-67 of 81.) Thus, the broad scope of the clause presumably encompasses all the claims in the state court action and greatly reduces any concern for duplicative litigation of claims. Regarding Respondents' argument that there is a risk of inconsistent results if both actions are permitted to go forward (Doc. 10-2, p. 28 of 32), Petitioners requested that this court stay the pending state court action if the motion to compel arbitration is granted. Since this court could stay the state court action, *see infra* Part III.F, there is little risk of inconsistent results. Accordingly, the third factor clearly weighs against abstention.

The fourth factor similarly counsels against abstention. The Supreme Court explained that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Although Respondents initiated the state action by writ of summons on November 4, 2013, they did not file their complaint in the state action until July 7, 2014. After responding to the complaint by way of preliminary objections raising alternative dispute resolution on July 23, 2014, Petitioners filed the petition to commence the federal action on July 22, 2014. Very little progress has been made in either jurisdiction.

Nevertheless, Respondents assert that the timing of Petitioners' federal action raises the "specter of impermissible forum shopping" and that the preliminary objections have been fully briefed in state court and oral argument scheduled. (Doc. 10-2, pp. 29-30 of 32.) Respondents cite to *Gekas*, 309 F. Supp. 2d 652 (M.D. Pa.

2004), characterizing the case as involving a "strikingly similar [set of] facts." (Doc. 10-2, p. 29 of 32.) However, *Gekas* is readily distinguishable. In *Gekas*, the state court defendants filed a federal action seeking to compel arbitration six months after the filing of the complaint, which was a year and a half after the state court plaintiffs notified of their intent to sue, *while* the state court considered submissions on the enforcement of the arbitration agreement at issue. *Gekas*, 309 F. Supp. 2d at 658. In contrast, Petitioners filed their petition within a month of the complaint and before the court heard oral argument on the preliminary objections.[2]   Accordingly, because both proceedings are in the preliminary stages of litigation, the fourth factor does not weigh in favor of abstention. *See Manor Care of Camp Hill v. Fleagle*, Civ. No. 13-cv-2449, 2013 WL 6185604, *5 (M.D. Pa. Nov. 25, 2013) (finding that six month gap between state court filing and petition filing was not a significant delay for fourth factor purposes); *but see Gekas*, 309 F. Supp. 2d at 658-59 (explaining how petitioner's delay in filing in federal court of one and a half years after respondent notified of intent to sue weighed heavily in favor of abstention).

The fifth factor is neutral because both state and federal law apply to the matter before this court. The FAA governs whether the arbitration agreement is enforceable. *See Moses H. Cone*, 460 U.S. at 24. Indeed, state law may provide the rule of decision under the savings clause of the FAA. *See* 9 U.S.C. § 2 ("[Arbitration agreements] shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."); *AT&T Mobility LLC v.*

---

[2]   The court notes that Petitioners obviously filed their preliminary objections in the state court action to preserve their rights. The Pennsylvania Rules of Civil Procedure require that all preliminary objections be raised at one time, including objections based upon an agreement for alternative dispute resolution. *See* Pa. R. Civ. P. 1028(a)(6). Had Petitioners not raised this issue by virtue of their preliminary objections, they may have waived the objection.

*Concepcion*, ___ U.S. ____, ____, 131 S.C t. 1740, 1748 (2011) (stating that Section 2 of the FAA preserves generally applicable contract defenses). Thus, in order to address the petition, the court must first determine whether the arbitration agreement is a valid contract between the parties, an analysis of which requires consideration of Pennsylvania substantive contract law. Moreover, based on Respondents' opposition both to the petition to arbitrate in federal court and to the preliminary objections in state court, Respondents challenge the ADR Agreement under principles of state law governing contract formation. However, this alone does not warrant abstention.

   The sixth consideration addresses whether the state court will adequately protect Petitioners' interests. This factor weighs in favor of abstention. The FAA grants concurrent jurisdiction to state and federal courts, and state courts must enforce the FAA to the same extent as federal courts. *Nationwide Fire Ins.*, 571 F.3d at 308. This factor is influential when the state court does not protect the parties' interests. *Gekas*, 309 F. Supp. 2d at 660. The Cumberland County bench has capable jurists, and this court has no doubt in the state court's ability to resolve the FAA arbitration issues presented herein. No ruling by the county court has indicated that it will not uphold the strong policy in favor of arbitration. *See Ross Dev. Co. v. Advanced Bldg. Dev. Inc.*, 803 A.2d 194, 196 (Pa. Super. Ct. 2002) ("Pennsylvania courts have long strongly favored arbitration for the resolution of legal disputes."); *see also, e.g., Cormany v. Manorcare*, Civ. No. 13-5381, Opinion (Pa. Com. Pl. Cumb. Cnty. May 22, 2014) (sustaining preliminary objections where arbitration agreement was signed by the power of attorney); *Fleagle v. Manorcare*, Civ. No. 12-0828, Opinion (Pa. Com. Pl. Cumb. Cnty. Nov. 22, 2013) (sustaining preliminary objections where signator to arbitration agreement had authority to do so

due to power of attorney). *But see Ronan v. Manorcare*, Civ. No. 11-7482, Opinion (Pa. Com. Pl. Cumb. Cnty. Aug. 27, 2012) (overruling preliminary objections where husband-signator had no authority to bind wife-resident to arbitration agreement); *Wert v. Manorcare*, Civ. No. 12-0165, Opinion, (Pa. Com. Pl. Cumb. Cnty. Sept. 13, 2012) (overruling preliminary objections where arbitration agreement was signed by resident's daughter who had no authority to bind resident); *Taylor v. Manorcare*, Civ. No. 12-1419, Opinion (Pa. Com. Pl. Cumb. Cnty. Sept. 13, 2012) (overruling preliminary objections where signator of arbitration agreement did not hold power of attorney at the time the agreement was executed).  Accordingly, this factor weighs in favor of abstention.

On balance, the relevant factors do not weigh heavily in favor of abstention in this case.  Although the sixth factor favors abstention, all other factors favor federal jurisdiction or are otherwise neutral.  Since abstention under *Colorado River* is only permitted in very narrow circumstances, the court will retain jurisdiction over the petition to compel arbitration.  *Moses H. Cohen*, 460 U.S. at 25-26 ("[T]he task is to ascertain whether there exists 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction.").

E.     **Validity of agreement**

Turning to the merits of the motion, Respondents argue that the court should deny the motion to compel arbitration on the basis that the ADR Agreement attached to the petition is unenforceable.  (Doc. 10-2, pp. 12, 15 of 32.)  Respondents cite to the ADR Agreement attached to the petition, arguing that "there is no dispute that [Respondent] Brooks ***did not*** sign the [ADR] Agreement."  (*Id.* at p. 12 of 32 (emphasis in original).)  Petitioners argue that the ADR Agreement was properly executed per its terms and that the underlying claims are clearly within the scope of the ADR Agreement.  (Doc. 11, p. 6 of 25.)  The court rejects Respondents arguments and concludes that the ADR Agreement is enforceable on its face.

When considering a motion to compel arbitration, the court first looks to "whether a valid agreement to arbitrate exists and [second,] whether the particular dispute falls within the scope of that agreement."  *Smith v. Virgin Islands Tel. Corp.*, Civ. No. 13-cv-0108, 2014 WL 4412523, *2 (D.V.I. Sept. 8, 2014) (alteration in original) (citing *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)).  The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate.  *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989).

Respondents do not appear to challenge whether the underlying state court claims fall within the broad scope of the ADR Agreement.  Thus, this matter turns on whether a valid agreement to arbitrate exists.  At its essence, Respondents' argument can be broken down to two challenges: the first focusing on the fact that Respondent Brooks's signature does not appear on the line designated for the

signature of the resident's legal representative and the second focusing on the fact that Petitioners' representative never signed the agreement.  Neither defect is fatal to the enforceability of the agreement under Pennsylvania law.

Arbitration is a matter of contract, and in determining whether an agreement to arbitrate is valid, courts apply the laws of the state where the contract was formed.  *Browne v. Acuren Inspection Inc.*, Civ. No. 11-cv-0104, 2014 WL 1308838, *3 (citing *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995)).  In Pennsylvania, the principles applicable to agreements to arbitrate are those applicable to the interpretation of contracts.  It is well established that:

> Nothing is better settled than that in order to constitute a contract there must be an offer on one side and an unconditional acceptance on the other.  So long as any condition is not acceded to by both parties to the contract, the dealings are mere negotiations and may be terminated at any time by either party while they are pending.  There must be a meeting of minds in order to constitute a contract.  This doctrine is very familiar and has been recognized many times in [Pennsylvania] courts.

*Quiles v. Financial Exch. Co.*, 879 A.2d 281, 285 (Pa. Super. Ct. 2005) (quoting *Cohn v. Penn Beverage Co.*, 169 A. 768, 768-69 (1934); *Parsons Bros. Slate Co. v. Commonwealth*, 211 A.2d 423, 424 (1965)).  Simply stated, under Pennsylvania law, a valid contract exists when: (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) the agreement is supported by consideration.  *See Dunn v. B & B Auto.*, Civ. No. 12-cv-0377, 2012 WL 2005223, *2 (E.D. Pa. June 5, 2012) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).  Agreements to arbitrate are upheld only where it is clear that the parties have agreed to arbitrate in a  clear and

unmistakable manner.  *Id*. at 287 (citing *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926 (1964)).  A motion to compel arbitration may be granted when there is "no genuine issue of fact concerning the formation of the agreement to arbitrate."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (internal quotation mark omitted).  "In making this determination, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences that may arise."  *Id*. (internal quotation marks omitted).

Upon review of the arbitration agreement, it becomes readily apparent that the agreement is enforceable.  The terms of the agreement are sufficiently definite to be enforced and the agreement is supported by consideration in the form of mutual binding of the parties to utilize alternative dispute resolution measures.  *See Blair*, 283 F.3d at 603.  Furthermore, attached to the complaint is a durable power of attorney dated July 29, 2005, granting power of attorney over Decedent to Respondents.  (Doc. 1-1, pp. 78-80 of 81.)  Indeed, Respondents do not challenge whether Respondent Brooks had durable power of attorney to act on behalf of Decedent or that Respondent Brooks's signature appears on the agent's acknowledgment.  (*Id*. at p. 79 of 81.)  Rather, their challenge focuses on the manifestation of parties' intent to be bound by the agreement based upon their signatures or lack thereof.

Respondents argue that Petitioners' representative failed to sign the agreement.  In this regard, Respondents argue that:

> [I]t would set an unsettling precedent if Defendants – and others in the business of presenting similar contracts of adhesion containing arbitration provisions – could adopt or reject the existence of the arbitration agreement when advantageous.  We are left to guess whether Petitioners, for

> example, anticipated having to file a collection action
> against [Decedent] and thus purposely omitted their
> signature, thereby allowing them to file said action in state
> court and relieving themselves of the costs of arbitration.

(Doc. 10-2, p. 14 of 32.)  Evidently, Respondents attribute an insidious motive to Petitioners' omission.  However, as pointed out by Petitioners, the ADR Agreement does not need a signature of Petitioners' representative to be enforceable, as it provides that "[t]his agreement shall be binding upon the [Petitioners] when signed by or on behalf of the Resident, *regardless of whether this Agreement has been signed by a Facility representative*."  (Doc. 1-1, p. 66 of 81 (emphasis supplied).) Accordingly, the enforceability of the ADR Agreement against Petitioners does not hinge on whether Petitioners' representative signed the agreement and the court need not worry about setting an "unsettling precedent" in this regard.

Moreover, Respondents' claim that "[Respondent] Brooks refused to take the next step of executing the Agreement" (Doc. 10-2, p. 12 of 32) is clearly without merit at best and disingenuous at worst.  Respondents are apparently wearing blinders as they appear to purposely overlook the clear existence of Respondent Brooks's signature on the ADR Agreement simply because it appears on the line designated to specify the capacity of the legal representative rather than on the line that is designated for the legal representative's signature.  A signature appearing less than two inches away from where it was intended to appear does not provide a valid basis to disregard an otherwise valid agreement.  Clearly, Respondent Brooks signed the agreement, albeit on the wrong line.  Accordingly, the face of the ADR Agreement establishes that there is an agreement to arbitrate.

27

Moreover, the court disagrees with Respondents' contention that there exists "disputes of material fact . . . with respect to the issue of who signed the [ADR] Agreement, if anyone, and when," and that the court should deny the instant motion to compel and permit discovery on these issues.  (Doc. 10-2, p. 15 of 32.)  As stated, the ADR Agreement was clearly signed by Respondent Brooks, which is a conclusion necessitating only a cursory layman's comparison of the signature appearing on the ADR Agreement and the durable power of attorney.  (*Compare* Doc. 11-1, p. 8 of 12 *with* Doc. 1-1, p. 79 of 81.)  Furthermore, the ADR Agreement was executed in 2012 by Respondent Brooks, who obtained durable power of attorney in 2005.  (*See* Doc. 1-1, pp. 69-79 of 81.)  The time line created by the documents submitted along with the petition clearly establishes that Respondent Brooks had authority to enter into the ADR Agreement on behalf of Decedent.  Accordingly, discovery is unnecessary because, based on the face of the ADR Agreement, there is "no genuine issue of fact concerning the formation of the agreement to arbitrate."  *Kirleis*, 560 F.3d at 159.

In answering Respondents' challenge to the validity of the ADR Agreement, the court emphasizes the following: Respondent Brooks was granted durable power of attorney in July 2005 to act on behalf of Decedent (Doc. 1-1, p. 79 of 81); Decedent was admitted to Petitioners' facility in 2012 (Doc. 1, ¶ 19); Respondent Brooks executed the ADR Agreement on behalf of Decedent at or near the time of Decedent's admission (Doc. 1-1, p. 67 of 81); and the ADR Agreement does not require a signature from Petitioners' representative to be enforceable against Petitioners (Doc. 1-1, p. 66 of 81).  Accordingly, the motion to compel arbitration will be granted.

**F.   Stay of Proceedings**

Having found that Respondents must submit their claims to arbitration, the question turns on whether this court should enjoin the pursuit of the state court action.  The court finds that such an injunction is necessary.

Pursuant to the Anti-Injunction Act, federal courts may generally not issue injunctions to stay state court proceedings.  28 U.S.C. § 2283.  However, three circumstances operate as exceptions to the Anti-Injunction Act: (1) when an injunction is expressly authorized by Congress; (2) when an injunction is necessary in aid of the court's jurisdiction; or (3) when an injunction is necessary to protect or effectuate the federal court's judgments.  *Id*.

The FAA itself "does not expressly authorize federal courts to enjoin state court proceedings."  *Insurance Newsnet.com Inc. v. Pardine*, Civ. No. 11-cv-0286, 2011 WL 3423081, *4 (M.D. Pa. Aug. 4, 2011).  Courts have instead found that an injunction of pending arbitration falls under the second exception to the Anti-Injunction Act because it is necessary to aid in the court's exercise of jurisdiction over the petition to compel arbitration. *See, e.g., id.*; *Morgan Stanley Dean Witter Reynolds v. Enterman*, Civ. No. 03-cv-2247, 2003 WL 22020065, *3 (E.D. Pa. July 3, 2003).  An injunction in this case properly falls within the exception for injunctions necessary to protect or effectuate the court's judgment because the court has determined that the parties entered into a binding arbitration agreement covering the scope of Respondents' claims.  Having made such a determination and deciding that Respondents will be compelled to proceed to arbitration, it is necessary for the court to enjoin Respondents from pursuing their claims in an alternative forum, including state court.  Otherwise, Respondents would be permitted to circumvent

their arbitration agreement and, in doing so, circumvent this court's judgment that they be compelled to arbitrate their claims.  Accordingly, the court will order that Respondents be enjoined from proceeding with their pending state court action.

**IV.**        **Conclusion**

The matter before this court is neither novel nor complex.  The underlying federal petition makes several things clear: Respondent Brooks, who was granted authority to act on behalf of Decedent through a durable power of attorney, executed a broad agreement providing for alternative dispute resolution of all claims related to Decedent's stay at Petitioners' facility.  The fact that her signature appears on the wrong line of the ADR Agreement does not remove the clear fact that she assented to the document's terms.  Thus, the ADR Agreement is valid and enforceable, and the claims asserted by Respondents in the state court are properly subject to alternative dispute resolution.

The court only reaches this conclusion after having first determined that it has subject matter jurisdiction over the instant petition based on diversity and that the petition need not be dismissed for Petitioners' failure to join an indispensable party.  In fact, the face of the complaint clearly establishes the diversity of parties and the court does not read *Vaden* and its progeny to mandate a "look through" approach to a case invoking the court's diversity jurisdiction.

Furthermore, this case is not the first of its kind, and courts routinely deny such requests to abstain from exercising jurisdiction.  More importantly, after consideration of the parties' arguments and posture of this case, *Colorado River* does not counsel abstention.  Indeed, the court finds little reason to abstain from

exercising jurisdiction, notwithstanding it having full faith in the Cumberland County Court of Common Pleas to correctly apply the mandates of the FAA.

In short, Respondent Brooks agreed to arbitrate the types of claims she has asserted in the state court action.  Respondents will be held to fulfill their obligations to do so.  Enjoining the state court proceedings is necessary to avoid eviscerating the ADR Agreement and the processes for dispute resolution contained therein.  For these reasons, the motion to compel will be granted in its entirety.

An appropriate order will issue and be docketed separately.


                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated:  September 24, 2014.

31